# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                    No. CR 03-2365 JB

DANIEL SHADOWHAWK FOGHORN,

       Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Motion *in Limine* for a Determination of Admissibility of Evidence Related to the Conviction by Plea of Former Co-Defendants Nez and Tso, filed October 12, 2004 (Doc. 88). The primary issue is whether the Court should permit the Defendant, Daniel Shadowhawk Foghorn, to elicit evidence that his former co-Defendants, Trevor Nez and Erickson Tso, were convicted of second degree murder. Because the Court concludes that the Defendant has a substantial right to cross-examine Nez and Tso about the benefits that they may have received by entering into the plea agreements with the United States, and the prejudice to the United States is less clear and can be cured or mitigated by giving an appropriate limiting instruction, the Court will deny the motion to preclude evidence of the degree of murder, but grant the motion to preclude discussion of the sentences that Nez and Tso received.

## FACTUAL BACKGROUND

Foghorn's former co-Defendant, Nez, has no prior convictions other than the murder conviction in this case. Foghorn's other former co-Defendant, Tso, has a prior conviction in addition to the murder conviction in this case. The parties have not explained what Tso's prior conviction is.

## PROCEDURAL BACKGROUND

Nez entered into a plea agreement with the United States by the terms of which he agreed to

testify in the Defendant's trial.  The pertinent terms of the agreement are that the Nez agreed to the

following:

> a.      The defendant [Nez] will cooperate with the United States by giving truthful
> and complete information and/or testimony concerning his participation in and
> knowledge of criminal activities.  The defendant understands that if he falsely
> implicates an innocent person in the commission of a crime in order to appear
> cooperative, or if the defendant falsely minimizes the involvement of any person in the
> commission of a crime in order to protect that person, then the defendant will be in
> violation of this plea agreement, and the United States will have the right to rescind
> the plea agreement and proceed with criminal proceedings against the defendant,
> without regard to this plea agreement[].
>
> b.      The defendant will testify truthfully if called as a witness in any state or federal
> grand jury investigation and/or any civil or criminal proceeding brought by the U.S.
> Attorney's Office for the District of New Mexico. . . .
>
> d.      Upon completion of the defendant's cooperation described above, the United
> States may move, pursuant to U.S.S.G. § 5K1.1, to have the Court depart downward
> from the applicable sentence.  The defendant understands that the decision whether
> to seek a downward departure for substantial assistance will be made in the sole
> discretion of the United States Attorney for the District of New Mexico.  The
> defendant further understands that under no circumstances related to the defendant's
> providing testimony, will the United States seek a U.S.S.G. § 5K1.1 downward
> departure to exceed one level.

Trevor Nez' Sealed Plea Agreement, ¶ 9, at 5-6.  Tso's plea agreement, on the other hand, does not

contain any provision providing for a possible reduction in his sentence in exchange for his testimony.

Tso's agreement does, however, plead guilty to second degree in exchange for certain benefits,

including the dropping of first degree murder charges.

At the hearing on this motion, the United States indicated that, although its plans are subject

to change according to how the trial progresses, it has no intention of call Nez or Tso to testify.  See

Transcript of <u>Crawford</u> and Admissibility of Evidence Motions *in Limine* Hearing at 22:8-16 (hereinafter, "Transcript").[1]  The Defendant indicated that he may call Nez to testify; however, the Defendant is uncertain of his intentions because Nez thus far has refused to speak with the Defendant's counsel.  <u>See</u> Transcript at 47:13-24.  It is also not clear if the Defendant intends to call Tso.  But if either the Defendant or the United States call Nez or Tso, the United States does not object to the questioning by either party about any conviction other than the murder conviction related to this charge.

The United States moves the Court, based on the pleadings that the parties have submitted and on argument at the hearing that the Court held on October 15, 2004, to restrict evidence addressing the conviction and sentencing of former co-Defendants, through plea agreements with the United States, to prevent prejudice, confusion, and inappropriate excursions by the jury into issues related to sentencing rather than guilt determinations.  The Defendant states that he does not intend to introduce or elicit information about the length of the sentences imposed for Nez' and Tso's prior felony convictions.  The Defendant otherwise opposes this motion.

## ADMISSIBILITY OF PRIOR CONVICTIONS

## I.    DISCLOSURE OF PLEA AGREEMENTS.

The bestowment of benefit in exchange for testimony raises issues of motive, bias, and reliability which a defendant has the right the explore at trial.  "[E]vidence of any understanding or agreement as to a future prosecution would be relevant to [the witness'] credibility and the jury is

---

[1]  Unless otherwise indicated, the Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any finalized transcript may contain slightly different page and/or line numbers.

entitled to know of it." <u>Giglio v. United States</u>, 405 U.S. 150, 155 (1972). "Although the guilty plea of a co-participant cannot be used as substantive evidence of the Defendant's guilt, either the Government or the Defendant may elicit evidence of a guilty plea for permissible reasons, including assessing the credibility of the witness or showing acknowledgment by the witness of participation in the offense." <u>United States v. Maroney</u>, 1997 WL 748661, at *2 (10th Cir. Dec. 3, 1997)(unpublished decision).

The defendant's ability to elicit information regarding an agreement, however, is not without court-imposed limitations. Although a court may impose reasonable limits on the scope of cross examination, such limitations are subject to the Sixth Amendment constitutional right to confrontation. <u>See</u> <u>United States v. Toles</u>, 297 F.3d 959, 967 (10th Cir. 2002). "A defendant's [Sixth Amendment] Confrontation Clause rights are violated when he is prohibited from engaging in otherwise appropriate cross-examination designed to elicit the witness' bias and a reasonable jury might have received a significantly different impression of the witness' credibility." <u>Id.</u> at 967 (citing <u>Delaware v. Van Arsdall</u>, 475 U.S. 673, 680 (1986)). In addition, if the government calls a witness with whom it has a plea agreement, the government may, "during its direct examination, [] present evidence of the agreements between the government and the witnesses . . . ." <u>United States v. Lord</u>, 907 F.2d 1028, 1031 (10th Cir. 1990).

If a party introduces evidence of a plea, "the trial judge should instruct the jury that the evidence of the guilty plea is received for these purposes alone, and that the plea cannot form the basis of any inference of the guilt of the defendant." <u>U.S. v. Davis</u>, 766 F.2d 1452, 1456 (10th Cir. 1985)(citing <u>United States v. Baez</u>, 703 F.2d 453, 355 (10th Cir. 1983)).

## II.    MECHANICS OF RULE 609(A)(1).

### A.    RULE 609(A)(1) INCORPORATES RULE 403's BALANCING.

The United States has found one case that held murder to be a crime of dishonesty or false statement because the defendant had hidden the murder of his wife by setting it up as a suicide.  See Blake v. Coughlin, No. 99-0208, 2000 WL 233550, at **1 (2d Cir. Feb. 16, 2000)(unpublished decision).  See also United States v. Dunson, 142 F.3d 1213, 1215 (10th Cir. 1998)(discussing generally the identification of which crimes relate to dishonesty or false statement as identified in rule 609(a)(2)); United States v. Meijia-Alarcon, 995 F.2d 982, 988-90 (10th Cir. 1993), cert. denied, 510 U.S. 927 (1993)(same); J. Draper, What Constitutes Crime Involving "Dishonesty or False Statement" Under Rule 609(a)(2) of the Uniform Rules of Evidence or Similar State Rule -- Nonviolent Crimes, 84 A.L.R.5th 487 (2004).  But for the most part, rule 609(a)(1) of the Federal Rules of Evidence governs the admissibility of prior convictions as evidence for purposes of impeachment of a witness at trial.  Rule 609, Impeachment by Evidence of Conviction of Crime, states:

> (a) General Rule: For the purpose of attacking the credibility of a witness,
>
>     (1) evidence that a witness other than an accused has been convicted of a crime shall be admitted subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and evidence that an accused has been convicted of such a crime shall be admitted if the court determines that the probative value outweighs its prejudicial effect to the accused . . . .

Fed. R. Evid. 609(a)(1).

The current rule 609 incorporates a balancing to protect the accused's interest and a general 403 inquiry whether the evidence offered will unfairly prejudice to a greater degree than it will be

probative.  In 1989, rule 609 did not mention rule 403 and provided:

> For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted if elicited from the witness . . . during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant . . . .

Fed. R. Evid. 609(a)(1989).  In interpreting this version of rule 609, the Supreme Court of the United States, in dicta in Greene v. Bock Laundry Machine Co., 490 U.S. 504 (1989), stated:

> [B]y its terms the Rule requires a judge to allow impeachment of any witness with prior convictions for felonies not involving dishonesty 'only if' the probativeness of the evidence is greater that its prejudice 'to the defendant.'  It follows that impeaching evidence detrimental to the prosecution in a criminal case 'shall be admitted' without any such balancing.

Id. at 509 (internal citations and quotations omitted).  In 1990, Congress amended rule 609 to include an express mandate to also conduct rule 403 balancing in making a determination under rule 609(a)(1).  The Advisory Committee explained that the amendment's purpose was to "resolve[] an ambiguity as to the relationship of Rules 609 and 403 with respect to impeachment of witnesses other than the criminal defendant.  See[] Green v. Bock Laundry Machine Co., 109 S.Ct. 1981, 490 U.S. 504 (1989)."  The Advisory Committee further stated:

> Prior to the amendment, the rule appeared to give the defendant the benefit of the special balancing test when defense witnesses other than the defendant were called to testify.  In practice, however, the concern about unfairness to the defendant is most acute when the defendant's own convictions are offered as evidence.  Almost all of the decided cases concern this type of impeachment, and the amendment does not deprive the defendant of any meaningful protection, since Rule 403 now clearly protects against unfair impeachment of any defense witness other than the defendant.  There are cases in which a defendant might be prejudiced when a defense witness is impeached.  Such cases may arise, for example, when the witness bears a special relationship to the defendant such that the defendant is likely to suffer some spill-over effect from impeachment of the witness.

The amendment also protects other litigants from unfair impeachment of their witnesses. The danger of prejudice from the use of prior convictions is not confined to criminal defendants. Although the danger that prior convictions will be misused as character evidence is particularly acute when the defendant is impeached, the danger exists in other situations as well. The amendment reflects the view that it is desirable to protect all litigants from the unfair use of prior convictions, and that the ordinary balancing test of Rule 403, which provides that evidence shall not be excluded unless its prejudicial effect substantially outweighs its probative value, is appropriate for assessing the admissibility of prior convictions for impeachment of any witness other than a criminal defendant. . . .

Fewer decided cases address the question whether Rule 609(a) provides any protection against unduly prejudicial prior convictions used to impeach government witnesses. Some courts have read Rule 609(a) as giving the government no protection for its witnesses. See, e.g., United States v. Thorne, 547 F.2d 56 (8th Cir.1976); United States v. Nevitt, 563 F.2d 406 (9th Cir.1977), cert. denied, 444 U.S. 847 (1979). This approach also is rejected by the amendment. There are cases in which impeachment of government witnesses with prior convictions that have little, if anything, to do with credibility may result in unfair prejudice to the government's interest in a fair trial and unnecessary embarrassment to a witness. Fed.R.Evid. 412 already recognizes this and excluded certain evidence of past sexual behavior in the context of prosecutions for sexual assaults.

The amendment applies the general balancing test of Rule 403 to protect all litigants against unfair impeachment of witnesses. The balancing test protects civil litigants, the government in criminal cases, and the defendant in a criminal case who calls other witnesses. . . .

The probability that prior convictions of an ordinary government witness will be unduly prejudicial is low in most criminal cases. Since the behavior of the witness is not the issue in dispute in most cases, there is little chance that the trier of fact will misuse the convictions offered as impeachment evidence as propensity evidence. Thus, trial courts will be skeptical when the government objects to impeachment of its witnesses with prior convictions. Only when the government is able to point to a real danger of prejudice that is sufficient to outweigh substantially the probative value of the conviction for impeachment purposes will the conviction be excluded. . . .

Fed. R. Evid. 609 advisory committee's note (1990).

In its decisions after the 1990 amendment, the United States Court of Appeals for the Tenth

Circuit expressly adopted the mandate that, under rule 609(a)(1), the court must consider both unfair

prejudice to the defendant and to other litigants, including the United States.  In United States v.

Howell, 285 F.3d 1263 (10th Cir. 2002), the Tenth Circuit explained:

> Rule 609 expressly states that the evidence of a felony conviction "shall be admitted,
> subject to Rule 403." Fed.R.Evid. 609(a)(1).  Our cases have emphasized the
> mandatory nature of that Rule 403 balancing.  See, e.g., Gust v. Jones, 162 F.3d 587,
> 596 (10th Cir.1998)("Rule 609(a)(1) *requires*, in addition to a threshold length and
> severity of punishment, an application of the balancing test of Federal Rule of
> Evidence 403.")(emphasis added); United States v. Begay, 144 F.3d 1336, 1338 (10th
> Cir.1998)("Rule 403 balancing applies *unless* the prior crime involves dishonesty or
> false statements.")(emphasis added); cf. United States v. Mejia-Alarcon, 995 F.2d
> 982, 987 n.2 (10th Cir.1993)("[A]ny final determination as to admissibility under Rule
> 609(a)(1) *rests on a balancing* of the probative value and prejudicial effect of the
> conviction.")(emphasis added); United States v. Linn, 31 F.3d 987, 992 (10th
> Cir.1994)(noting in dicta that "[i]n 609(a)(1), the rule requires the judge to weigh
> prejudice."); United States v. Owens, 723 F.2d 64, 65 (10th Cir.1983)("[A]n
> automatic decision by a trial court to permit the Government to cross-examine an
> inmate-witness concerning any or all prior criminal convictions, without carefully
> applying the balancing test we set forth in [United States v.] Rosales[, 680 F.2d 1304,
> 1306 (10th Cir. 1981)], would in and of itself be a clear abuse of discretion.").

Id. at 1269.  The Tenth Circuit also noted that the 403 balancing applies, not only to evidence used

to impeach the accused, but also a government's witness' felony conviction.  See id. at 1269 n.2.

"[W]e have indicated that we are more deferential to the district court's decision concerning the

admissibility of evidence of a felony conviction where the court has conducted [rule 403] balancing."

Id. at 1269 (citing United States v. Begay, 144 F.3d 1336, 1338 (10th Cir. 1998)).

   Rule 403 provides that the Court may exclude evidence "if the probative value is substantially

outweighed by the danger of unfair prejudice, confusion of the issue . . . ."  The trial court's

responsibility is to protect the jury from evidence that unfairly plays on their emotions without

precluding necessary and useful evidence related to the determination of guilt.  "Unfair prejudice in

the Rule 403 context 'means an undue tendency to suggest decision on an improper basis, commonly,

though not necessarily, an emotional one.'  Fed. R. Evid. 403 advisor committee's note."  United

States v. Tan, 254 F.3d 1204, 1211 (10th Cir. 2001).

Either party may reveal the prior conviction under rule 609(a); one purpose of the 1990 amendments to rule 609(a) was to "eliminate[] the restriction that prior convictions only be revealed on cross-examination and consequently conforms the Rule to the common practice whereby trial attorneys 'remove the sting' of impeachment by revealing prior convictions on direct examination." G. Weissenberger, Federal Evidence: 2004 Courtroom Manual § 609, at 175 (2004).

## B.   ADMISSIBLE DETAILS OF PLEA AGREEMENTS.

### 1.   Nature of the Conviction.

If a party attempts to introduce a plea agreement to impeach a co-defendant's credibility, the next question becomes what details of the plea agreement are admissible.  The Tenth Circuit has held that, "ordinarily, evidence of a witness'[] felony conviction shall include information about the nature of that conviction unless, after Rule 403 balancing, the probative value of such evidence is outweighed by its prejudicial effect."  United States v. Howell, 285 F.3d at 1268-69.  In explaining the importance of introducing the nature of the criminal conviction, the Tenth Circuit quoted the United States Court of Appeals for the Eleventh Circuit, which explained:

> The implicit assumption of Rule 609 is that prior felony convictions have probative value.  Their probative value, however, necessarily varies with their nature and number.  See United States v. Cathey, 591 F.2d 268, 276 (5th Cir.1979)("The probative value of a prior conviction is a function of at least two factors, the nature of the past crime and the remoteness of the conviction.").  Evidence of a murder conviction says something far different about a witness' credibility than evidence of a conviction for a minor drug offense, although both may constitute a prior felony conviction.

United States v. Burston, 159 F.3d 1328, 1335 (11th Cir. 1998)(footnote omitted).

The trial court, however, is not always required to admit evidence of the nature of the prior

conviction.  See United States v. Howell, 285 F.3d at 1270 ("[W]e do not suggest that courts must always admit evidence of the nature of a prior felony conviction.  After conducting the Rule 403 balancing, the court may determine that evidence of the conviction, or certain aspects of the conviction are properly excluded.").  In reaching this conclusion, the Tenth Circuit cited United States v. Ford, 17 F.3d 1100 (8th Cir. 1994), in which the United States Court of Appeals for the Eighth Circuit held that the district court did not err in excluding the specific nature of a prosecution's witness' prior felony conviction.  Id. at 1103.  In United States v. Ford, the defendant introduced evidence that the prosecutor's witness had been convicted of a felony, but the district court prohibited Ford from disclosing that the felony was a sexual offense against a minor.  See id.  As the Eighth Circuit explained: "It is within the district court's discretion to conclude that the nature of [the witness'] sexual offense might in inflame the jury."  Id.  In United States v. Howell, however, the Tenth Circuit held that the district court erred in placing a blanket prohibition on any information on the nature of the prosecution's witness' convictions.  See United States v. Howell, 285 F.3d at 1268. The district court allowed only "the fact of conviction, . . . the date of conviction, [and] number of convictions."  Id. at 1267.

The Tenth Circuit, however, has not directly addressed the issue of, when a plea agreement is offered to impeach a former co-defendant, what specific terms of the former co-defendant's agreement the party may introduce.  The Court, therefore, looks to decisions from other circuits for guidance as to the inquiry's permissible scope.  The United States Court of Appeals for the Ninth Circuit, in United States v. Mayans, 17 F.3d 1174 (9th Cir. 1994), stated: "The details of a plea agreement are 'highly relevant' in assessing the credibility of a co-defendant who has pled guilty, and inquiry into such details is 'essential' for effective cross-examination."  Id. at 1184 (quoting United

-10-

States v. Roan Eagle, 867 F.2d 436, 443-44 (8th Cir.), cert. denied, 490 U.S. 1028 (1989)).

The Eighth Circuit, in United States v. Roan Eagle, held that the district court erroneously excluded the charge to which a co-defendant plead in her plea agreement. See id. at 444. In United States v. Roan Eagle, two defendants, Angeline Eagle and Georgianna Brave, were charged with first degree murder. Brave plead guilty to manslaughter, reducing her maximum possible sentence from life to ten years in prison. As part of the plea agreement, Brave agreed to testify against Eagle. In a pre-trial motion, the district court ruled that the jury could be appraised of:

> (i) the charge in the indictment, (ii) her cooperation with the prosecution, and (iii) the fact that she was allowed to plead guilty to a lesser charge: [sic] but the court expressly prohibited any inquiry into (i) the specific lesser charge (manslaughter) to which she pleaded, or (ii) the sentence to which she was exposed, or might receive. The court also elected to defer sentencing Brave until it had heard what the total facts are as brought out in [Roan Eagle's] case.

Id. at 440 (internal quotation marks omitted). According to the Eighth Circuit, the district court judge decided to withhold the charge to which the co-defendant plead -- manslaughter -- from the jury out of concern that the jury would be prejudiced and "would likely select the crime under the Judge's charge which would result in a like punishment." Id. at 443. The Eighth Circuit, however, held that, despite these concerns, the manslaughter charge to which Brave plead should have been admitted. As the Eighth Circuit explains:

> When the stakes are so high and the credibility of the one-time associate-in-crime is acutely involved, the accused is entitled as a matter of right to effective cross-examination. This includes not only the specific crime to which the co-actor is pleading guilty, but the range of punishment to which the one pleading guilty is exposed to in contrast to what that person knows--or ought to know--is the potential sentence for a conviction following a plea of not guilty. . . . The details of a plea can be highly relevant to a jury in assessing the credibility of a guilty-pleading co-defendant who has taken the stand to testify for the prosecution. This is especially true if that witness has not yet been sentenced as there is a continuing incentive to give testimony that strengthens the prosecution's case.

Id. (internal citations omitted).  Despite its holding, the Eighth Circuit concluded that the error was harmless because of the lack of incriminating evidence provided by Brave in her testimony.  See id. at 444.

### 2.   Sentence Imposed.

Whether to allow into evidence the sentence imposed for the felony conviction is a separate issue.  The Tenth Circuit, in discussing the scope of cross examination of the accused, held that the cross examination "should be confined to a showing of the essential facts of the convictions, the nature of the crimes, and the punishment."  United States v. Albers, 93 F.3d 1469, 1479-80 (10th Cir. 1996)(quoting United States v. Wolf, 561 F.2d 1376, 1381 (10th Cir. 1977).  These Tenth Circuit cases, however, do not address the special considerations that may apply when the witness is not the accused, but instead is a former co-defendant and the punishment relates to the same or similar charge confronting the defendant on trial.

The Eighth Circuit, however, has addressed the issue, when a former co-defendant enters into a plea agreement with the United States and then testifies at the trial of the defendant, whether the sentence the former co-defendant received under the plea agreement is admissible.  See United States v. Roan Eagle, 867 F.2d at 443-44.  In United States v. Roan Eagle, the Eighth Circuit held the district court erred when it prohibited the defendant from cross examining the former co-defendant as to the specific charge to which he plead and the difference in punishment received for entering into the plea agreement.  See id. at 443-44.  As discussed above, the Eighth Circuit explained that admitting the "range of punishment to which the one pleading guilty is exposed to in contrast to what that person knows -- or ought to know -- is the potential sentence for a conviction following a plea of not guilty," is crucial to evaluating the credibility of the witness.  Id. at 443.

-12-

The United States Court of Appeals for the First Circuit, however, reached a different conclusion in Brown v. Powell, 975 F.2d 1, **5-6 (1992).  In Brown v. Powell, the First Circuit reviewed, on petition for habeas corpus, a defendant's conviction in the New Hampshire state court. See id. at *1.  The Victor Warner was charged with first degree murder and Timothy Brown was charged with being an accomplice to first degree murder.  See id. at *3.  Before trial, Warner entered into a plea agreement in which he plead guilty to the reduced charge of manslaughter.  See id.  The state sentenced him to 15 to 30 years in prison, the maximum term for manslaughter.  See id.  As part of Warner's plea agreement, he agreed to testify in the trial of Brown and was guaranteed immunity from other charges.  See id.  When Warner testified at Brown's trial, the state trial court permitted Brown to cross examine Warner about his guilty plea to manslaughter and his sentence of fifteen to thirty years in prison.  See id. at *4.  The trial judge, however, prohibited Brown from cross-examining Warner about the mandatory sentence for first degree murder -- life imprisonment without parole.  See id. at *4.  The First Circuit reviewed the issue of raised by the defendant whether it was error to exclude "the fact that Warner avoided a potential life sentence of life in prison without parole was a crucial piece of information for the jury to evaluate the bias of Warner's testimony."  Id. at *4.

The First Circuit held that the state court did not err in excluding the testimony about the sentencing range received and avoided by pleading guilty.  Id. at **4-5.  In reaching its conclusion, the First Circuit noted that Warner testified that "he had avoided a potential conviction for first and second degree murder and hindering apprehension by entering into a plea agreement," that the state court instructed the jury that manslaughter is a lesser-included offence of second degree murder, and that the defendant had the opportunity to cross-examine Warner on other matters bearing on his credibility.  See id. at *5.  The First Circuit also reasoned that, because Warner informed the jury that

-13-

he plead to manslaughter and received fifteen to thirty years in prison, "the jury could have inferred . . . Warner avoided a significantly harsher penalty that if he had been tried and convicted for first or second degree murder . . . ." Id. Senior District Court Judge Pollack dissented, concluding that, by prohibiting the jury from hearing that Warner evaded a possible mandatory life sentence without parole by pleading guilty, the defendant's rights under the Confrontation Clause were violated. See id. at **6-8.

## III.   IMPEACHING A WITNESS.

Under rule 607 of the Federal Rules of Evidence, "[t]he credibility of a witness may be attacked by any party, including the party calling the witness."

## ANALYSIS

In the event either Nez or Tso testifies, the Court should address whether and to what extent the plea of guilt and the terms of that plea are admissible before the jury. For the reasons given below, the court holds that the Court should allow the Defendant to elicit this evidence.[2]

## I.   THE EXISTENCE OF NEZ' AND TSO'S PLEA AGREEMENTS IS ADMISSIBLE.

While the United States ultimately does not object to the introduction of the fact of the plea agreement, the United States suggests that the provisions of Nez' plea agreement about testifying may not be relevant because the United States is not calling him and may not be invoked if the Defendant calls Nez. The Court need not interpret the plea agreement and decide when its benefits are invoked to decide this motion, and indeed, the United States does not ask the Court to make a contract interpretation at this stage. That the Defendant, and not the United States, is the party that

---

[2] Nothing in this case establishes a pattern of untruth by the Defendant that would remove this case from the mainstream of rulings. Rule 609(a)(2), therefore, is not at issue.

is likely to call Nez and Tso as witnesses does not change the conclusion that Nez's and Tso's plea agreements are admissible.

First, there is a good faith argument that the benefits of testifying are invoked even if the defendant calls Nez.  Under the terms of the plea agreement, Nez must "testify truthfully if called as a witness . . . ."  Although the plea agreement also requires that Nez "cooperate with the United States by giving truthful and complete . . . testimony[,]" there is no requirement that the United States be the party calling Nez to testify.  To the contrary, under the terms of the plea agreement, the only requirement is that Nez testify truthfully.  There is no requirement, therefore, that the United States be the party calling Nez to testify to invoke the benefits received under the plea agreement.  Given this language, the Court cannot say the plea agreement is irrelevant to the issues in this case.[3]

Second, if no plea agreement were entered into in the first place, neither Nez or Tso would be available to testify because of the protections afforded under the Fifth Amendment of the United States Constitution.  It is the plea agreements that give rise to this motion.  In addition, whatever benefit that the plea agreement conferred was bargained for and bestowed at the time the parties entered into the plea agreement.  Moreover, regardless who calls Nez, the United States retains sole discretion to petition the Court for a reduction in sentencing.  Whether a reduction in sentence is a likely occurrence if the Defendant calls Nez and considering Nez has already been sentenced is not a proper consideration for this Court at this time.  Because the plea agreement confers broad discretion with the United States to seek a reduction in Nez' sentence in exchange for this truthful

---

[3]  In addition, at the hearing, Paula Burnett, an attorney for the United States, stated that the Court need not decide the issue of whether or not the plea agreement applies when it is the Defendant, and not the United States, calling a former co-Defendant as a witness.  <u>See</u> Transcript at 56:5-13.

testimony, the plea agreement's benefits are relevant regardless who calls Nez to testify.

In any case, the United States does not oppose the examination either of Tso or Nez as to whether they have entered into a plea agreement with the United States.  Instead, it objects to the introduction of evidence that each of them pled guilty to second degree murder that than to first degree murder.  The United States also does not object to the Defendant asking Nez or Tso if they plead guilty to murder without the inclusion of the qualifiers of first or second degree.  Thus, the only remaining issue is whether the Court will permit mention of the degree of murder for which Nez and Tso were convicted, and, if so, of their sentences.

## II.    THE DEFENDANT HAS THE RIGHT TO REVEAL THE BENEFIT THAT THE PLEA AGREEMENT CONFERS.

The Defendant has the right to question Nez about the benefits that he derived from the provision in his plea agreement requiring Nez to testify against the Defendant.  See Giglio v. United States, 405 U.S. 150, 155 (1972).  It would greatly diminish the Defendant's right to question Nez about the plea agreement's benefits without the opportunity to question him fully about the agreement's terms, including the crime to which he plead.  The defendant's right to question witnesses about motive, bias, self-interest, and credibility should not be diminished unless there is a compelling reason to do so.  Therefore, at least in terms of Nez' plea agreement, the benefit conferred on him -- pleading second degree murder and agreeing to testify against the Defendant in exchange for the United States dropping the first degree murder charge -- is admissible.

Tso's plea agreement lacks any provision relating to the agreement to testify in exchange for a possible reduction in sentence, and, therefore, the Giglio v. United States analysis arguably does not apply to his testimony.  Neither party, however, has asked the Court to distinguish between the

-16-

two co-Defendants.  This is probably because Nez is the more culpable co-Defendant, and if the jury learns he got second degree that will likely have more impact than what Tso got; Tso and the Defendant are at a similar level of culpability.  In any case, the Court does not think it should distinguish between the two co-Defendants, for two reasons.  First, neither Nez or Tso would be available to be compelled to testify without the plea agreement.  Thus, the fact that they have "really nothing to lose now" makes the plea agreement and its benefits relevant to their credibility.  Second, the United States could still seek a downward departure for Tso if it desires, even without a provision in the plea agreement.  See U.S.S.G. § 5K1.1.  Accordingly, because neither party seeks to draw a distinction between the two co-Defendants, and none seems warranted, the Court will not draw one.

## III.   THE "NATURE OF THE CONVICTION" INCLUDES THE DEGREE OF MURDER.

In United States v. Howell, the Tenth Circuit held that the nature of the prior conviction, although subject to 403 balancing, may be admissible.  Before conducting this balancing, however, this Court must first determine the scope of the term "nature of the conviction."

Despite the case law addressing the issue of the nature of prior convictions, there are few cases providing a precise definition of what constitutes the "nature of the conviction."  For guidance, therefore, it is necessary to examine on what information about the prior conviction other courts focused when determining whether to admit the nature of the conviction.  The Tenth Circuit, in United States v. Howell, held that the district court erred by impermissibly restricting any discussion of the offense committed by the witness, and instead, by only allowing reference to the fact the witness was convicted of the broad category of "felony."  See 285 F.3d at 1266-67.  In supporting its conclusion, the Tenth Circuit cites United States v. Burston, a United States Court of Appeals for the Eleventh Circuit case which held that it was error to exclude any testimony as to the nature of the

-17-

conviction.  In United States v. Burston, the district court restricted the testimony to elicit only the fact the witness had been convicted of "a felony conviction."  159 F.3d at 1334.  In reversing this decision, the Eleventh Circuit held that it was error to exclude that the witness, in fact, had committed four felonies, two for theft by taking and two for aggravated assault.  See id. at 1335-36.  These cases indicate that the nature of the conviction, in the sense of Nez and of Tso pleading to murder, is admissible.

These cases, and others of a similar vein, do not clarify whether a district court should admit the degree of murder.  In United States v Roan Eagle, however, the Eighth Circuit addressed this issue and held that the fact that the former co-defendant plead to voluntary manslaughter was important to the jury's ability to assess the former co-defendant's credibility.  See United States v Roan Eagle, 867 F.2d at 442-44.  Although the Eighth Circuit did not use the phrase "nature of the conviction," its analysis indicates that the court considered the fact of pleading to voluntary manslaughter rather than first-degree murder significant to providing a complete picture of the plea agreement and the character of the prior conviction.  This Court holds, therefore, that the fact that Nez and Tso pleaded guilty to second degree murder is included within the broad category of the "nature of the conviction."

## IV.    RULE 609'S AND RULE 403'S BALANCING COUNSEL THAT THE COURT SHOULD ADMIT EVIDENCE OF NEZ' AND TSO'S PLEADING GUILTY TO SECOND DEGREE MURDER.

Contrary to the Defendant's assertions, under rule 609(a)(1) as amended in 1990, the Court must consider both unfair prejudice to the defendant and to other litigants, including the United States.  See United States v. Howell, 285 F.3d at 1269; Fed. R. Evid. 609 advisory committee's note.  The Court must, therefore, balance whether the probative value of admitting the fact that Nez and

Tso plead guilty to second degree murder outweighs its prejudicial effect.  After undertaking rule 403's balancing, the Court cannot say that the probative value of the murder degree is substantially outweighed by potential prejudice to the United States.

### A.   THE COURT MUST ASSUME ON THIS MOTION THAT THE DEFENDANTS ARE ATTEMPTING TO PROPERLY IMPEACH NEZ AND TSO.

The United States argues that the Defendant's sole purpose for seeking to introduce this evidence of the degree of murder and number of counts of conviction is to allow the Defendant to argue and to otherwise encourage the jury to abdicate its responsibility to determine if the Defendant should be found guilty of first degree murder -- not to attack the co-defendants' credibility.  The United States argues that, because the sole permitted purpose of allowing questioning regarding prior convictions is to impeach a witness' credibility, the Court should safeguard the jurors' right to consider only the evidence before them, without the confusion and undue pressure of knowing what similarly situated defendants have chosen to do and how they have been punished.

It is a time-honored tradition that either party may elicit from a witness on direct information about prior convictions to avoid the appearance during cross examination that the party offering the witness was trying to fool or mislead the jury by not disclosing its witnesses' prior criminal history.  This conditioning is also a recognized method of preventing the opposing party from impeaching the witness.  While such conditioning is no doubt correct as good trial tactic, the Court must be careful not to allow the Defendant to call Nez and Tso only for the purpose of impeaching them.  That technique would not be impeachment.  Calling Nez or Tso only to attack his credibility would suggest to the Court that the Defendant's only purpose in calling Nez and Tso is to get the evidence of second degree murder before the jury.  Thus, if the Defendant calls Nez and Tso, he must do so with the

intent of eliciting more testimony than that they were convicted of second degree murder.

**B.    THE PREJUDICE TO THE UNITED STATES IS NOT CLEAR.**

The United States expressed concern that the introduction of the evidence related to the prior conviction could unfairly prejudice the jury to convict the Defendant of second degree murder. This potential prejudice, however, operates both for and against the Defendant. It is true that the introduction of evidence that the Court convicted Nez and Tso of second degree murder might convince a jury to convict the Defendant of second degree, rather than first degree, murder, even though the Defendant may deserve to be convicted of first degree. The United States maintains that the introduction of evidence of degree may encourage the jury to find the Defendant guilty of second degree without proper consultation. On the other hand, the possibility the jury will not convict the Defendant of first degree murder, accepting at most a verdict of second degree murder, will work to the Defendant's disadvantage. Eliciting testimony of the degree of murder might also convince a jury to convict him on second degree who might otherwise look to a lesser included or to acquit. Hence, the prejudice to the United States is not clear.

The Court believes that the Defendant, in his defense, should make this delicate calculus about which way the prejudice may cut, not the Court. What the Court must determine is whether the prejudice identified by the parties substantially outweighs the probative value of this evidence. The Court cannot say the probative value of the degree of murder is substantially outweighed by the prejudice to the United States when the prejudice to the United States is less than clear.

**C.    THERE MAY NOT BE AN EQUALLY PROBATIVE SUBSTITUTION.**

Moreover, there is no clear alternative to disclosing the degree of murder. When the Court asked the United States's attorney, Paula Burnett, how else it could communicate to the jury the

benefit Nez and Tso received under the plea agreement without including the plea of second degree, the United States did not offer the Court any solution:

> THE COURT: How does [the Defendant] communicate [the benefit received] to the jury without using the word "second degree"?
>
> MS. BURNETT: I was thinking about that, because I think the other way to do it -- And this is something that I think would clearly be inadmissible, as well.
>
> Q:  Well, that doesn't help me, then, does it?
>
> A:  I know.
>
> Q:  I'm looking for a solution.
>
> A:  . . . I don't have a solution for the Court.  I'm sorry.

Excerpt of Transcript at 2:5-17.[4]  Given the lack of clear prejudice to the United States, and given the lack of other equally probative evidence of the bargain, the Court cannot say that permitting either party to elicit the degree of murder is clearly more prejudicial than probative.

## V.   THE SENTENCES NEZ AND TSO RECEIVED ARE INADMISSIBLE AT THIS TIME.

The Defendant's counsel no longer seeks to introduce the sentence that either or both Nez and Tso received.  At the hearing, the United States represented that, if the Defendant offered testimony that Nez and Tso pled guilty to second degree murder, it would seek to introduce evidence as to the sentences Nez and Tso received.  See Transcript at 28:20 - 29:8.  The United States, however, acknowledges that the jury should not be considering issues of sentencing.  See id.  If the United States does seek to introduce Nez' and Tso's sentences, it must first approach the Court.

At this point, the Court cannot conceptualize any legitimate purpose for which the United

---

[4]  This transcript citation is an excerpt, in final form, filed separately in the record.

States could seek to admit Nez' and Tso's sentences.  Unlike <u>United States v. Roan Eagle</u> and <u>Brown</u> <u>v. Powell</u>, in which the defendant sought to impeach the witnesses credibility by introducing evidence of the former co-defendant's sentence, in this case it is the United States that is attempting to introduce the sentencing information.  If it were the Defendant trying to impeach with the sentence, the Court might be inclined to follow <u>United States v. Roan Eagle</u> and the dissent in <u>Brown v. Powell</u> and allow it.  It is not clear, however, how the United States' introduction of the sentence would impeach the witness or would rehabilitate the witness.  If and when the United States seeks to introduce evidence of Nez' and/or Tso's sentences, the United States must supply the Court with support indicating on what basis such information would be appropriate.

## VI.   A LIMITING INSTRUCTION IS APPROPRIATE TO PREVENT MISUSE OF THE EVIDENCE BY THE JURY.

The United States submits that, in addition to limiting the information that the Defendant can present to the jury related to the pleas and sentences of the two former co-Defendants, the Court should, at the time of such evidence, give a special limiting instruction to remind the jury to use the information related to the convictions only to assist them in determining whether that witness is truthful or biased.  Such an instruction would be appropriate.  The United States may prepare and submit the appropriate instruction.

**IT IS ORDERED** that the United States' Motion *in Limine* for a Determination of Admissibility of Evidence Related to the Conviction by Plea of Former Co-Defendants Nez and Tso is granted in part and denied in part.  The Court will address this motion and rule on this motion before trial, or at least before the co-Defendants testify, and will determine to what extent evidence related to the prior convictions of the former co-Defendants is admissible at trial.  The Court will not

preclude the Defendant from eliciting any testimony from Nez and Tso that they were convicted of second degree murder.  The parties will not, however, elicit testimony about Nez' and Tso's sentences without first approaching the Court.  The Court instructs the United States not to mention, refer to, interrogate about, or attempt to convey to the jury in any manner, either directly or indirectly, any excluded evidence.  Otherwise, evidence of the nature of the crimes for which Tso and Nez have been previously convicted are admissible at the trial of the Defendant.  The United States may submit an appropriate limiting instruction regarding the jury's proper use of the evidence of degree.  The Defendant may not call Nez and Tso solely to impeach them; while the Defendant may impeach a witness he calls, he must truly be impeaching that witness, not simply getting before the jury evidence that otherwise would not be admissible.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

David C. Iglesias
  United States Attorney for the
    District of New Mexico
Paula Burnett
Glynette Carson McNabb
  Assistant United States Attorneys for the
    District of New Mexico
Albuquerque, New Mexico

      *Attorneys for the Plaintiff*

D. Penni Adrian
Joseph M. Campbell
Albuquerque, New Mexico

      *Attorneys for the Defendant*