IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.	No. CR 03-2365 JB

DANIEL SHADOWHAWK FOGHORN,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Motion in Limine to Preclude Inquiry by the United States into the Doctor-Patient Relationship Between Expert Don F. Seelinger M.D. and Defendant's Counsel, filed July 18, 2005 (Doc. 177). The primary issue is whether the Court should preclude *in limine* the United States from questioning Seelinger about medical testing he conducted on Ms. Penni Adrian, Defendant Daniel Shadowhawk Foghorn's counsel, at some time between 1981 and 1984. Because the Court is reluctant to foreclose questions that go to bias, and because the Court cannot say that its probative value is substantially outweighed by the danger of unfair prejudice, the Court will deny the motion.

## PROCEDURAL BACKGROUND

Seelinger is a neurologist. From 1964 through 1999, Seelinger was a principal in Neurology Consultants Ltd. At some time between 1981 and 1984, the primary care physician for Foghorn's counsel referred her to Seelinger's group for neurological testing.

It was Seelinger who performed the tests and reported to Ms. Adrian's primary care physician. Seelinger has no recollection of performing tests on Ms. Adrian. Foghorn has listed

Seelinger as a witness. He will testify at trial about the cognitive affects of the head injuries that Paul Williams suffered on October 25, 2003. Ms. Adrian reported her prior encounter with Seelinger as she believed the rules requiring disclosure mandated her to do.

The United States has indicated that it intends to ask Seelinger about these test performed more than twenty years ago as a means of impeaching his objectivity in reaching his conclusions. The United States does not intend to address the nature of the doctor-patient relationship, but the fact that it existed.

## **ANALYSIS**

Rules 401 and 403 of the Federal Rules of Evidence govern the determination of admissibility. Foghorn contends that, because Seelinger has no recollection of meeting Ms. Adrian and of performing the tests on Ms. Adrian, there is no basis for suggesting that the testing affected his objectivity in rendering an opinion in this matter. Foghorn argues that the only purpose of making such suggestion before the jury is to attempt to embarrass Foghorn's counsel and to "cloud the issues" that the jury must consider when hearing Seelinger's testimony.

The rules of evidence permit parties to examine a witness regarding potential bias and prior relationships the witness may have with other witnesses or parties in the courtroom, and that may otherwise be relevant to the proceedings. This principle is of particular import with regard to an expert witness who has no connection with the case other than that one of the parties hired the expert to render an expert opinion about a specific aspect of the case. The jury has the task of determining if there is anything about a witness, including an expert witness, or that witness' relationship to the a case, which renders that witness either more or less trustworthy.

The Court is reluctant to restrict questions that go to bias, which can be some of the most

powerful modes of impeachment. While the questions here may not be particularly effective, and may in fact prompt the jury to think that, if that is all the United State has to combat Seelinger, this witness must be worth listening to, that is a strategic decision for the United States to make, not the Court. When an attorney mounts an attack, the lawyer should be prepared to sustain the challenge, else a trifle will cloud more serious assertions. Moreover, the questioning on this issue will likely be brief, neither taking up much trial time or confusing the jury on this simple issue.[1]

Nothing about the prior relationship produces an unfair prejudice or otherwise is likely to inflame the jury's passions. Any embarrassment to Foghorn's counsel is unlikely. While the questioning may produce weak relevant evidence, the Court cannot say that under rule 403 that its probative value is substantially outweighed by the danger of unfair prejudice. The jury's use of such testimony and evidence is within the jury's province. The Court will not enter an order *in limine* precluding the United States from querying Seelinger about medical testing he conducted for Ms. Adrian at some time between 1981 and 1984, but will permit the United States, should it so choose, to fully examine Seelinger as to his relationship with Foghorn and his counsel, related to doctor-patient contacts, personal contacts, and any other bias that may be of use to the jury in the determination of the facts.

**IT IS ORDERED** that the Defendant's Motion in Limine to Preclude Inquiry by the United States into the Doctor-Patient Relationship Between Expert Don F. Seelinger M.D. and Defendant's Counsel is denied.

---

[1] Foghorn does not explain how the evidence would cloud the issues. If the could relates to an evaluation whether the expert has a bias that a prior relationship created, that is an issue for a jury to decide.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

David C. Iglesias
  United States Attorney for the
    District of New Mexico
Paula G. Burnett
  Deputy Criminal Chief Assistant
    United States Attorney
Glynette Carson McNabb
  Assistant United States Attorney for the
    District of New Mexico
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

D. Penni Adrian
Albuquerque, New Mexico

*-- and --*

Arturo B. Nieto
Albuquerque, New Mexico

    *Attorneys for the Defendant*